UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF FLORIDA

PENSACOLA DIVISION

| | |
|---|---|
| DAISY LUONG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PAYPAL HOLDINGS, INC., a Delaware corporation, HONEY SCIENCE CORPORATION<br><br>Defendant. | **CASE NO.**<br><br>**CLASS ACTION COMPLAINT FOR**<br><br>1. **CONVERSION**<br>2. **TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>3. **VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PARCTICES ACT**<br>4. **UNJUST ENRICHMENT** |

**COMPLAINT**

Plaintiff, Daisy Luong ("Plaintiff"), individually and on behalf of all other members of the below-defined class (the "Class"), upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, based upon the investigation made by her attorneys, alleges as follows:

**INTRODUCTION**

1.      This case involves PayPal's browser extension, Honey, that "automatically finds and applies coupon codes at checkout with a single click.[1]"  Over the past few years, Honey has been one of the most popular affiliate partners among influencers. Honey has been promoted by over 1,000 YouTube channels, including some of the platform's biggest names.

---

[1] https://www.joinhoney.com/ (last viewed January 31, 2025.)

CLASS ACTION COMPLAINT

1    2.    Plaintiff is an affiliate partner for a number of companies. When an affiliate

2  partner—the creator, influencer, or publisher posting the link—signs up for a brand's affiliate

3  marketing program, they receive a unique link to the brand's website or product pages. These links

4  contain the affiliate partner's unique ID to enable the tracking of conversions.[2]

5    3.    When a potential customer clicks on the link, it's attributed to the affiliate, allowing

6  the brand to record the source of the traffic. If someone buys a product using an affiliate link, the

7  brand will pay the affiliate marketer commission on the sale.[3]

8    4.    The affiliate marketing industry is projected to reach $16 billion by 2028.[4]

9    5.    In an effort to divert some of this money, the Honey app has been replacing original

10 affiliate links with its own at checkout, therefore redirecting commissions that should have gone

11 to content creators such as Plaintiff and publishers who contributed more meaningfully to the sale.

12    6.    Plaintiff, individually and on behalf of the other Class members, accordingly files

13 this claim for damages and injunctive relief, seeking an immediate end to PayPal's abusive

14 practices and for recompense for the harm that has already been done.

15

16    **PARTIES**

17    7.    Plaintiff Daisy Luong is a citizen of Florida and, at all relevant times, has been a

18 resident of Pensacola, Florida. She is a consumer who downloaded and used Honey to find the

19 best coupon codes available on online purchases.

20    8.    Defendant PayPal Holdings, Inc. is a Delaware corporation and holds all assets and

21 liabilities of PayPal, Inc., a subsidiary Delaware corporation. PayPal transacts business in this

22 district and is headquartered at 2211 North First Street, San Jose, California 95131. The two

23 entities are collectively referred to as "PayPal."

24

25

26  [2] https://www.shopify.com/blog/how-to-make-affiliate-links(last viewed January 31, 2025.)
[3] https://www.shopify.com/blog/how-to-make-affiliate-links(last viewed January 31, 2025.)

27  [4] https://www.shopify.com/blog/how-to-make-affiliate-links (last viewed January 31, 2025.)

28

CLASS ACTION COMPLAINT

9.      In addition, PayPal owns and operates Honey, aka the Honey Science Corporation, which had originally developed the Honey browser extension. Honey was purchased by PayPal in 2020. The term "PayPal" shall encompass Honey, unless otherwise noted.

### JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and one or more members of the Classes are residents of a different state than Defendant. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Defendant because it has continuous and systematic contacts with and conduct substantial business in the State of Florida and this District. Defendant maintains its principal place of business in this District and has continuous and systematic contacts with and conducts substantial business in the State of Florida and this District.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). A substantial part of the events giving rise to these claims took place in this District, Plaintiff and numerous Class members reside in this District and were therefore harmed in this District.

### FACTUAL ALLEGATIONS

*Honey Browser Extension*

13.      In March 2020, PayPal purchased a popular web browser extension called Honey for $4 billion. Recent estimates have found that Honey is installed on more than 20 million Google Chrome web browsers alone, making it the twelfth most popular extension for the Chrome browser.[5]

14.      The Honey browser extension is a "free" add-on compatible with nearly every major web browser.

---

[5] Matt Zeunert, Chrome Extension Statistics: Data from 2024, DebugBear (Aug. 29, 2024), https://www.debugbear.com/blog/chrome-extension-statistics.

CLASS ACTION COMPLAINT

15.     The PayPal website represents "[w]ith one click at checkout, PayPal Honey will search for and test available coupon codes on available sites. If a working code is found, the shopping extension then will automatically apply the one with the biggest savings to your cart. When shopping at participating stores using the PayPal Honey Shopping Extension, you will also have the chance to earn cash back on your eligible purchases through PayPal Rewards points.  At checkout, if rewards are available, click to activate and PayPal Rewards will automatically be earned giving you the change to earn rewards and save money at the same time[6].

16.     The promise is simple: just install the extension, shop online, and let Honey do the work for you.  While Honey is purportedly providing users with "free" coupons, it is doing so at the expense of Affiliate Marketers.

**Honey is Stealing Money from Affiliate Marketers**

17.     A few weeks ago MegaLag, a New Zealand YouTuber posted an online expose of Honey raising questions about Honey's operations and whether the extension truly serves the consumer's best interest or simply maximized its own profits.

18.     In the video MegaLag explained how Honey was hijacking affiliate links that are designed to pay influences for their efforts promoting products.

19.     Using what is often referred to as the "developer mode" of a web browser, the investigation studied network traffic for browsers with a Honey extension installed, and followed, click by click, as Honey stole an affiliate marketer's cookie.

20.     Honey uses two strategies to steal Affiliate Marketers' referrals. First, by Honey's design, if a user uses Honey to search for a coupon, Honey treats that search as authorization to overwrite an affiliate marketer's cookie and replace it with its own cookie.

21.     As a result, instead of the YouTuber being paid a commission, PayPal would get the entirety of the commission.

---

[6] https://www.paypal.com/us/digital-wallet/ways-to-pay/paypal-honey#:~:text=How%20does%20the%20PayPal%20Honey,biggest%20savings%20to%20your%20cart. (last viewed January 31, 2025.

CLASS ACTION COMPLAINT

22.     The investigator revealed that this cookie theft would occur even if Honey did not find any discounts for the product sought.

23.     An investigator reached out directly to PayPal and asked whether Honey was replacing cookies from Affiliate Marketers with its own cookie. PayPal admitted that it is, responding: "If Honey is activated and is the last program used while shopping on a site, it is likely Honey will receive credit for the purchase."

24.     Second, Honey uses a purported Rewards program to fight for the "last click attribution," the term of art for the affiliate marketer who should be credited with a customer's purchase (i.e., the marketer who inspired the "last click" that led to the sale).

25.     Now called PayPal Rewards (formerly Honey Gold), PayPal has partnered with what it claims to be approximately 1500 retailers to allow users to get "PayPal Rewards Points" when they make purchases.

26.     Even when there are no coupons, Honey will sometimes provide the user with "cash back" in the form of PayPal points.

27.     Activating the PayPal Rewards will lead to the replacement of an affiliate marketer's link with a PayPal link, again allowing PayPal to poach an Affiliate Marketer's commission.

**Plaintiff's Commissions were Stolen by PayPal**

28.     Plaintiff is a content creator based out of Fort Lauderdale, Florida.  Plaintiff posts content on several platforms including TikTok, Instagram, Pinterest, LTK (Like to Know It) and LinkTree.  Plaintiff earns commissions from affiliate marketing links placed on her accounts.  She partners with businesses, including Defendant's merchant partners, such as Amazon.com, through the Amazon Influencer program, to promote products.

29.      On information and belief, consumers' use of PayPal's Honey browser extension has led to the diversion of commissions away from Plaintiff, and to PayPal, instead.

30.     PayPal's Honey browser extension has deprived her of earnings she rightfully earned through her affiliate marketing links. As a direct and proximate result of PayPal's conduct

CLASS ACTION COMPLAINT

1   described herein, Plaintiff suffered economic injury by being deprived of commissions she should

2   have earned through affiliate marketing commissions.

3                                    **CLASS ACTION ALLEGATIONS**

4         31.     Plaintiff bring this nationwide class action individually, and on behalf of all

5   similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal

6   Rules of Civil Procedure.

7         32.     The Classes that Plaintiff seeks to represent are defined as follows:

8              **Nationwide Class**

9              All U.S. based Affiliates whose affiliate commissions from United States e-commerce

10             merchants were diverted to PayPal as a result of the Honey browser extension (the

11             "Class").

12             **Florida Subclass**

13             All Florida-based Affiliates whose affiliate commissions from United States

14             e-commerce merchants were diverted to PayPal as a result of the Honey browser

15             extension (the "Class").

16        Collectively, the Class and Florida Subclass are referred to as the "Classes" or "Class

17   Members."

18        33.     Excluded from the Classes are the following individuals and/or entities: Defendants

19   and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which

20   Defendants has a controlling interest; all individuals who make a timely election to be excluded

21   from this proceeding using the correct protocol for opting out; and all judges assigned to hear any

22   aspect of this litigation, as well as their immediate family members.

23        34.     Plaintiff reserves the right to amend the definitions of the Classes or add a Class or

24   Subclass if further information and discovery indicate that the definitions of the Classes should be

25   narrowed, expanded, or otherwise modified.

26        35.     Numerosity: The members of the Classes are so numerous that joinder of all

27   members is impracticable, if not completely impossible. The members of the Classes are so

28

CLASS ACTION COMPLAINT

numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time and such number is exclusively in the possession of Defendant, upon information and belief, millions of minor individuals are implicated.

36.    Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes. The questions of law and fact common to the Classes that predominate over questions which may affect individual Class Members, includes the following:

      a.    Whether PayPal's Honey browser extension was knowingly designed to replace the cookies of Class Members with PayPal cookies;

      b.    Whether PayPal's Honey browser extension in fact replaced the cookies of Class members with PayPal cookies;

      c.    Whether as a result of PayPal's actions PayPal has been awarded commissions that rightfully should belong to members of the Class;

      d.    Whether Class Members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, punitive damages, exemplary damages, and/or other relief;

      e.    Whether PayPal has been unjustly enriched to the detriment of Class Members; and

      f.    Whether Plaintiff and the other Class Members are entitled to declaratory, injunctive, or monetary relief, and if so, in what amount and form.

37.    Typicality: Plaintiff's claims are typical of those of the other members of the Classes because Plaintiff, like every other Class Member, were exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Classes.

38.    Policies generally applicable to the Classes: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendants' policies challenged herein apply to and affect Class

1    Members uniformly and Plaintiff's challenges of these policies hinges on Defendants' conduct

2    with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

3         39.    Adequacy: Plaintiff will fairly and adequately represent and protect the interests of

4    the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic

5    to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the

6    Class Members and the infringement of the rights and the damages suffered are typical of other

7    Class Members. Plaintiff has retained counsel experienced in complex class action and data breach

8    litigation, and Plaintiff intends to prosecute this action vigorously.

9         40.    Superiority and Manageability: The class litigation is an appropriate method for fair

10   and efficient adjudication of the claims involved. Class action treatment is superior to all other

11   available methods for the fair and efficient adjudication of the controversy alleged herein; it will

12   permit a large number of Class Members to prosecute their common claims in a single forum

13   simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and

14   expense that hundreds of individual actions would require. Class action treatment will permit the

15   adjudication of relatively modest claims by certain Class Members, who could not individually

16   afford to litigate a complex claim against large corporations, like Defendants. Further, even for

17   those Class Members who could afford to litigate such a claim, it would still be economically

18   impractical and impose a burden on the courts.

19        41.    The nature of this action and the nature of laws available to Plaintiff and Class

20   Members make the use of the class action device a particularly efficient and appropriate procedure

21   to afford relief for the wrongs alleged because Defendants would necessarily gain an

22   unconscionable advantage since Defendants would be able to exploit and overwhelm the limited

23   resources of each individual Class Member with superior financial and legal resources; the costs

24   of individual suits could unreasonably consume the amounts that would be recovered; proof of a

25   common course of conduct to which Plaintiff was exposed is representative of that experienced by

26   the Classes and will establish the right of each Class Member to recover on the cause of action

27

28

1    alleged; and individual actions would create a risk of inconsistent results and would be unnecessary

2    and duplicative of this litigation.

3         42.    The litigation of the claims brought herein is manageable. Defendants' uniform

4    conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class

5    Members demonstrate that there would be no significant manageability problems with prosecuting

6    this lawsuit as a class action.

7         43.    Adequate notice can be given to Class Members directly using information

8    maintained in Defendants' records.

9         44.    Unless a Class-wide injunction is issued, Defendants may continue to act

10   unlawfully as set forth in this Complaint.

11        45.    Further, Defendants have acted on grounds that apply generally to the Classes as a

12   whole, so that class certification, injunctive relief, and corresponding declaratory relief are

13   appropriate on a class- wide basis.

## CAUSES OF ACTION

### COUNT I:

### CONVERSION

### (On Behalf of the Nationwide Class)

18        46.    Plaintiff, individually and on behalf of others similarly situated, incorporates by

19   reference the foregoing paragraphs as if fully set forth herein.

20        47.    By virtue of their referrals of consumers to products and services offered by

21   Merchants, Plaintiff and other Class members acquired or were entitled to acquire commissions of

22   specific and ascertainable amounts.

23        48.    Plaintiff and the other Class members had a right or interest in commissions of

24   concrete, readily identifiable sums, which they earned from referring Customers to Merchants'

25   products and services, after those Customers made purchases from the Merchants.

26        49.    PayPal intentionally and substantially interfered with Plaintiff's and Class

27   members' personal property by causing its Honey browser extension to replace the cookie

28

CLASS ACTION COMPLAINT

1  associated with Plaintiff and other Class members with its own cookie, thereby receiving

2  commissions and referral fees owed to Plaintiff and the other Class members.

3         50.     Through its Honey browser extension, PayPal assumed and exercised the right of

4  ownership over these commissions without justification or authorization.

5         51.     PayPal's wrongful exercise of control over Plaintiff's and other Class members'

6  personal property constitutes conversion.

7         52.     As a direct and proximate result of PayPal's conversion, Plaintiff and other Class

8  members were harmed, and will continue to be harmed by PayPal's ongoing conduct through the

9  Honey browser extension.

10         53.     Plaintiff and other class members are entitled to recover damages and costs

11  permitted by law, and to injunctive relief to halt future conversion by PayPal through its ongoing

12  conduct.

13  **COUNT II**

14  **TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

15  **(On Behalf of the Nationwide Class)**

16         54.     Plaintiff, individually and on behalf of others similarly situated, incorporates by

17  reference all paragraphs 1 through 45.

18         55.     Plaintiff and other Class members are regularly engaged in an economic

19  relationship with Merchants. They send their followers to the Merchants through affiliate links,

20  and in return, the Merchants pay to Plaintiff and other Class members referral fees/commissions.

21         56.     PayPal has knowledge of that economic relationship.

22         57.     Through the Honey browser extension, PayPal directly and purposefully interfered

23  and continues to interfere with the economic relationship between Merchants, on the one hand,

24  and Plaintiff and other Class members, on the other. PayPal purposefully and unlawfully replaces

25  the tracking tags necessary for the Plaintiff and other Class members to be paid commissions and

26  in their place substitutes its own tracking tags to take the commission for itself.

27         58.     As a direct and proximate result of PayPal's interference, Plaintiff and other Class

28

CLASS ACTION COMPLAINT

1    members have suffered actual damages, including, but not limited to, the loss of commissions

2    earned as the actual originator of sales.

3        59.    Plaintiff and other Class members are entitled to recover their actual damages,

4    consequential damages, punitive damages, injunctive relief, attorneys' fees, costs, and any other

5    relief that the Court deems appropriate.

6    **COUNT III**

7    **VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

8    **(FDUTPA) F.S. §§501.201 et seq.**

9    ***(On behalf of Plaintiff and the Florida Subclass v. All Defendants)***

10        60.    Plaintiff re-alleges and incorporates by reference all the allegations contained in

11    paragraphs 1 through 45 above.

12        61.    Plaintiff brings this Count individually and on behalf of the Florida Subclass.

13        62.    Plaintiff and members of the Florida Subclass are residents of Florida.

14        63.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders

15    unlawful unfair methods of competition, unconscionable acts or practice, and unfair or deceptive

16    acts or practices in the conduct of any trade or commerce. § 501.204, Fla. Stat.

17        64.    Among other purposes, FDUTPA is intended "[t]o protect the consuming public

18    and legitimate business enterprises from those who engage in unfair methods of competition, or

19    unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." §

20    501.202, Fla. Stat.

21        65.    Defendant's actions are deceptive and in clear violation of FDUPTA, entitling

22    Plaintiffs and the Florida Subclass to damages and relief under Fla. Stat. §§ 501.201- 213.

23        66.    Defendant engaged in "trade" or "commerce" in Florida in that Defendant engaged

24    in the advertising, offering for sale, sale, and distribution of property or any other articles,

25    commodities, or things of value in Florida.

26        67.    Defendant engaged in consumer-oriented acts through the offer, promotion, and/or

27    distribution of Honey, which significantly impacted the public because Honey is used nationwide,

28

11
CLASS ACTION COMPLAINT

1    including in Florida, and there are millions of users, including Plaintiffs and members of the

2    Florida Subclass.

3        68.    Defendant has engaged in acts and practices that are false and deceptive in violation

4    of FDUTPA.

5        69.    Defendant's business acts and practices are unlawful because result in the theft of

6    commissions from Plaintiff and the members of the Class

7        70.    Defendants have unjustly enriched themselves for the reasons stated above.

8        71.    Defendants committed unconscionable, false, and deceptive business practices by

9    making false and misleading representations regarding the browser extension.

10       72.    Defendants wrongfully deprived, and continue to deprive, Plaintiff and other

11   Florida Subclass members of monies they otherwise would have saved by using other methods to

12   search for, and find, better coupon codes.

13       73.    But for Defendants' wrongful acts, Plaintiff would not have used Honey

14   exclusively and, instead, would have either not used Honey or would have searched for additional

15   discount codes or coupons available for online purchases.

16       74.    The gravity of harm resulting from PayPal's practices outweighs any potential

17   utility therefrom.

18       75.    Defendants' conduct as set forth in this Complaint violates public policy and has

19   caused Plaintiff and members of the Classes an insidious, unconscionable injury.

20       76.    As outlined herein, Defendants at all times had actual knowledge of their wrongful

21   conduct.

22       77.    Defendants have engaged, and continues to engage, in conduct that is likely to

23   deceive members of the public.

24       78.    Defendants conduct is unfair, immoral, unethical, oppressive, unscrupulous and

25   substantially injurious to consumers, and there are no greater countervailing benefits to consumers

26   or competition.

27

28

CLASS ACTION COMPLAINT

79.     Plaintiff and members of the Florida Subclass could not have reasonably avoided injury because Defendants took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers, to the detriment of Plaintiff and the Florida Subclass members.

80.     Plaintiff and the Florida Subclass did not know of Defendants' wrongful scheme.

81.     Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Fla. Stat. Ann. § 501.204, et seq.

82.     Plaintiff and members of the Florida Subclass were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to Plaintiffs and members of the Florida Subclass.

83.     As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Fla. Stat. Ann. § 501.204, et seq., Plaintiff and members of the Florida Subclass have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, *inter alia*, monies they otherwise would have saved by using other methods to search for, and find, better coupon codes, which allowed Defendants to profit at the expense of Plaintiff and members of the Florida Subclass. Such an injury is not outweighed by any countervailing benefits to consumers or to competition.

84.     The conduct alleged herein is continuing and there is no indication that Defendants will cease such activity in the future, absent an order from this Court.

85.     Because Defendants' misconduct is ongoing and continuing, prospective injunctive relief is necessary.  Absent injunctive relief, Defendants may continue their wrongful practices.

86.     Florida Statutes, Section 501.204, makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

87.     Florida Statutes, Section 501.211, creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

CLASS ACTION COMPLAINT

88.     Florida Statutes, Section 501.2105, provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees within the limitations set forth therein from the non-prevailing party.

89.     Florida Statutes, Section 501.213, provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

90.     Plaintiff and members of the Florida Subclass seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Fla. Stat. Ann. § 501.204, et seq. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction.

91.     In accordance with FDUTPA, Plaintiffs and the Florida Subclass seek an order enjoining Defendants from continuing to conduct business through unlawful acts and practices. Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

92.     On behalf of Plaintiffs and the Florida Subclass, Plaintiffs also seek an order entitling them and the Florida Subclass to recover all monies which were acquired through Defendants' acts of fraudulent, unfair, or unlawful competition.

**COUNT IV:**

**UNJUST ENRICHMENT**

**(*On behalf of Plaintiff and the Classes v. All Defendants*)**

93.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

94.     Plaintiff and other Class Members lack a fully adequate remedy at law.

95.     Plaintiff and other Class Members have an interest, both legal and equitable, in the monies they otherwise would have earned as commissions for their efforts as affiliate marketers which was wrongfully taken by Defendants.

CLASS ACTION COMPLAINT

96.    Defendants have been unjustly enriched by the payments that they took when they wrongfully replaced commission cookies from Plaintiff and the members of the Class.

97.    Defendants continue to benefit from their wrongful behavior, and profit through their use of the Honey extension to the clear detriment of Plaintiff and other Class Members.

98.    Defendants' wrongful acts are ongoing, continuing to harm members of the class while enriching Defendants.

99.    But for Defendants' wrongful acts, Plaintiff and other Class Members would not have used Honey exclusively and, instead, would have either not used Honey or would have searched for additional discount codes or coupons available for online purchase.

100.    It would be inequitable for Defendants to retain the benefit of their wrongdoing.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Class and Subclass members, respectfully requests that the Court:

A.    Certify this action as a class action, appoint Plaintiff as class representative, and appoint her counsel as Class Counsel;

B.    Declare that Defendants' conduct, as alleged herein, violates the laws of the states where Plaintiff and the other Class Members reside;

C.    Enjoin Defendants from continuing or engaging in the unlawful conduct alleged, or cease, their deceptive practices;

D.    Award Plaintiff and the other Class Members actual, statutory, treble, punitive, and consequential damages, in an amount to be determined at trial;

E.    Order Defendants to disgorge and/or restore all funds, revenues, and benefits obtained from Plaintiff and the other Class Members as a result of their unlawful conduct;

F.    Award Plaintiff and the other Class Members pre-judgment and post-judgment interest, as allowed by law;

CLASS ACTION COMPLAINT

1       G.      Award Plaintiff and the other Class Members' reasonable attorneys' fees, costs, and

2               expenses, as allowed by law or equity; and

3       H.      Grant Plaintiff and the other Class Members all other relief that the Court deems

4               just and proper.

DATED: February 11, 2025

**FASIG BROOKS PLLC**

By:  /s/ *Eric D. Stevenson*
Eric D. Stevenson
Florida Bar No.: 144495
815 S. Palafox St., Ste. 302
Pensacola, FL 32502
850-572-1963
estevenson@fasigbrooks.com
Attorneys for Plaintiff

**BRADLEY/GROMBACHER LLP**

By:  /s/ *Kiley Grombacher*
Marcus J. Bradley, Esq.
California Bar No.: 174156
Kiley L. Grombacher, Esq.
California Bar No.: 245960
Pro hac vice pending
31365 Oak Crest Dr., Suite 240
Westlake Village, California 91361
Telephone: (805) 212-5124
Facsimile: (805) 270-7589
Email: mbradley@bradleygrombacher.com
Email: kgrombacher@bradleygrombacher.com
Attorneys for Plaintiff

**<u>JURY DEMAND</u>**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury for all claims so triable.

CLASS ACTION COMPLAINT

1    DATED: February 11, 2025                    **FASIG BROOKS PLLC**

2

3                                         By:  /s/ *Eric D. Stevenson*
                                               Eric D. Stevenson
4

5                                              **BRADLEY/GROMBACHER LLP**

6

7                                         By:  /s/ *Kiley Grombacher*

8                                              Marcus J. Bradley, Esq.
                                               Kiley L. Grombacher, Esq.
9                                              Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT